No. _____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

——————————◆——————————

IN RE WARDEN TERRY RAYBON,
William C. Holman Correctional Facility,
*Petitioner*

——————————◆——————————

On Petition for a Writ of Mandamus
to the United States District Court
for the Northern District of Alabama,
*Michael Craig Maxwell v. Raybon*,
Case No. 3:10-cv-2066-MHH

——————————◆——————————

## PETITION FOR A WRIT OF MANDAMUS

——————————◆——————————

Steve Marshall
 *Attorney General*
A. Barrett Bowdre
 *Solicitor General*
Robert M. Overing
 *Principal Deputy Solicitor General*
Henry M. Johnson
 *Assistant Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
Robert.Overing@AlabamaAG.gov

March 3, 2026

*In re Warden Terry Raybon*, No. \_\_\_\_\_

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, undersigned counsel for Petitioner files this certificate to certify that the following persons may have an interest in the outcome of this case or petition:

1. Allen, Richard, former Commissioner of the Alabama Department of Corrections;

2. Alverson, Honorable Gary W., Colbert County District Attorney who prosecuted Michael Craig Maxwell for capital murder;

3. Bass, Marcus S., former Assistant Attorney General;

4. Bertsch, Tatiana, counsel for Maxwell;

5. Bowdre, A. Barrett, Alabama Solicitor General and counsel for Petitioner;

6. Brown, Kyle, Colbert County Assistant District Attorney;

7. Colfax, J. Drew, former counsel for Maxwell;

8. Daniel, Tracy M., former Assistant Attorney General;

9. Davis, Rosa H., former Assistant Attorney General;

10. Dunn, Jefferson S., former Commissioner of the Alabama Department of Corrections;

11. Ferguson, Thomas Dale, codefendant;

12. Gardner, Jr., B.T., former counsel for Maxwell;

13. Graham, Robert C., former counsel for Maxwell;

14. Greene, Honorable Paul W., Chief United States Magistrate Judge;

15. Haikala, Honorable Madeline Hughes, United States District Judge and former United States Magistrate Judge;

16. Hamm, John Q., Commissioner of the Alabama Department of Corrections;

17. Hatcher, Honorable Jacqueline M., Alabama circuit judge who denied and dismissed Maxwell's Rule 32 petition;

18. Hopkins, Honorable Virginia Emerson, United States District Judge;

19. Houts, James R., former Assistant Attorney General;

20. Hughes, Beth Jackson, Assistant Attorney General;

21. Illman, Robert H., former counsel for Maxwell;

22. Johnson, Henry M., Assistant Attorney General and counsel for Petitioner;

23. Johnson, Honorable Inge, Alabama circuit judge who presided over Maxwell's trial;

24. Katznelson, Zachary, former counsel for Maxwell;

25. Keeton, Kacey L., former counsel for Maxwell;

26. King, Honorable Troy, former Alabama Attorney General;

27. Marshall, Honorable Steve, Alabama Attorney General and counsel for Petitioner;

28. Maxwell, Michael Craig, Alabama death-row inmate;

29. McIntire, Jeremy W., former Assistant Attorney General;

30. Overing, Robert M., Principal Deputy Solicitor General and counsel for Petitioner;

31. Petersen, Michael J., former counsel for Maxwell;

*In re Warden Terry Raybon*, No. \_\_\_\_\_

32.  Pryor Jr., Honorable William H., former Alabama Attorney General and Chief Judge of the Eleventh Circuit Court of Appeals;

33.  Pugh, Harold, capital-murder victim;

34.  Pugh, Joey, capital-murder victim;

35.  Puzone, Katherine I., former counsel for Maxwell;

36.  Raybon, Terry, Petitioner and Warden of the William C. Holman Correctional Facility;

37.  Smith, Leslie S., former counsel for Maxwell;

38.  Stevenson, Bryan A., former counsel for Maxwell;

39.  Strange, Honorable Luther, former Alabama Attorney General;

40.  Susskind, Randall S., counsel for Maxwell; and

41.  Van Heest, Joseph P., former counsel for Maxwell.

Undersigned counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or petition.

Respectfully submitted,

Steve Marshall
*Attorney General*

*s/ Robert M. Overing*
Robert M. Overing
*Principal Deputy Solicitor General*

## STATEMENT REGARDING ORAL ARGUMENT
## AND TIME SENSITIVITY

The State of Alabama seeks mandamus to compel the district court to adjudicate a petition for writ of habeas corpus that has been pending since 2010. The State requests oral argument for two reasons. First, the State is contemporaneously filing four petitions raising the same issue. Undue delay in capital cases is a recurring—perhaps systemic—problem that deserves the Court's attention. Second, a prisoner will normally receive a stay of execution while his first federal habeas petition is pending; indefinitely withholding a ruling thus indefinitely disables the State from carrying out a presumptively lawful death sentence. This inflicts an ongoing harm on the State and on the victims, friends and family of the deceased for whom justice remains suspended.

The matter is not an "emergency" but may "be treated as 'time sensitive.'" *Cf.* 11th Cir. R. 27-1(b)(1). The exigency that has forced the State to seek mandamus—the district court's interminable delay—would be exacerbated if this Court heard the petition on a normal appellate timeline.

All that said, if the Court believes that oral argument would add further delay, the State's preference is a speedy disposition of the prisoner's habeas petition.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................C-1

STATEMENT REGARDING ORAL ARGUMENT AND TIME SENSITIVITY ... i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES .......................................................................... iii

PETITION FOR WRIT OF MANDAMUS ........................................................1

STANDARD OF REVIEW ............................................................................2

STATEMENT .............................................................................................3

    I.   State conviction and post-conviction proceedings. .......................................3

    II.  Federal habeas proceedings begin in 2010. ................................................3

REASONS TO ISSUE THE WRIT ...................................................................6

    I.   The State has no other adequate remedy available.........................................6

    II.  The State has a clear and indisputable right to relief......................................9

    III. Mandamus is appropriate under the circumstances......................................15

CONCLUSION .........................................................................................19

CERTIFICATE OF COMPLIANCE .................................................................21

CERTIFICATE OF SERVICE ........................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle*,
463 U.S. 880 (1983)........................................................................................8, 17

*Barksdale v. Att'y Gen.*,
No. 20-10993 (11th Cir.)......................................................................................17

*Bleitner v. Welborn*,
15 F.3d 652 (7th Cir. 1994)..................................................................................11

*Bucklew v. Precythe*,
587 U.S. 119 (2019)..............................................................................................10

*Carruth v. Commissioner*,
No. 22-13548 (11th Cir.)......................................................................................17

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)................................................................................................2

*Clency v. Nagle*,
60 F.3d 751 (11th Cir. 1995) ...............................................................................19

*Deardorff v. Warden*,
No. 23-11589 (11th Cir.)......................................................................................17

*Edwards v. Vannoy*,
593 U.S. 255 (2021)................................................................................................6

*Engle v. Isaac*,
456 U.S. 107 (1982)............................................................................................6, 7

*Ex parte Fahey*,
332 U.S. 258 (1947)................................................................................................7

*Fay v. Noia*,
372 U.S. 391 (1963)................................................................................................6

iii

*Ford v. Haley*,
179 F.3d 1342 (11th Cir. 1999)..............................................................................13

*Harrington v. Richter*,
562 U.S. 86 (2011).................................................................................................7

*Herrera v. Collins*,
506 U.S. 390 (1993)...............................................................................................6

*Hill v. Linahan*,
697 F.2d 1032 (11th Cir. 1983)............................................................................19

*In re Allen*,
No. 06-12591-P, 2006 WL 2086002 (11th Cir. June 8, 2006)............................17

*In re Allen*,
No. 06-12591-P (11th Cir. May 12, 2006).........................................................18

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996)................................................................................7

*In re Bennett*,
136 F.3d 1279 (1998)................................................................................ 13-15, 17

*In re Blodgett*,
502 U.S. 236 (1992)..................................................................... 13, 15, 16-17

*In re Connor*,
458 S.W.3d 532 (Tex. 2021) .................................................................................7

*In re Daker*,
685 F. App'x 790 (11th Cir. 2017).......................................................................10

*In re Dutton*,
9 F.3d 1548 (6th Cir. 1993)............................................................10, 11, 15, 18

*In re Futch*,
No. 14-14955, 2015 WL 1954063 (11th Cir. Apr. 27, 2015)..............................2

*In re Futch*,
  No. 14-14955 (11th Cir. Dec. 19, 2014) ...........................................................18

*In re Hicks*,
  118 F. App'x 778 (2005) ...................................................................................14

*In re Parker*,
  49 F.3d 204 (6th Cir. 1995) ...........................................................................7, 10

*In re Patenaude*,
  210 F.3d 135 (3d Cir. 2000) ................................................................................8

*In re Porter*,
  No. 23-11103, 2023 WL 6182543 (11th Cir. July 25, 2023) ...............................2

*In re Smith*,
  926 F.2d 1027 (11th Cir. 1991) ...........................................................................7

*In re United States ex rel. Drummond*,
  886 F.3d 448 (5th Cir. 2018) .............................................................................10

*In re Womack*,
  718 F. App'x 171 (3d Cir. 2018) ........................................................................16

*Jackson v. City of Cleveland*,
  64 F.4th 736 (6th Cir. 2023) ..............................................................................11

*Johnson v. Rogers*,
  917 F.2d 1283 (10th Cir. 1990) .............................................................. 2, 14, 15

*Jones v. Shell*,
  572 F.2d 1278 (8th Cir. 1978) ....................................................................... 11-12

*Kendall v. United States*,
  37 U.S. (12 Pet.) 524 (1838) ................................................................................9

*Knickerbocker Ins. Co. of Chicago v. Comstock*,
  83 U.S. 258 (1872) ...............................................................................................9

v

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957) ............................................................................................17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................15

*Litman v. Mass. Mut. Life Ins. Co.*,
    825 F.2d 1506 (11th Cir. 1987) ...........................................................................2

*Lonchar v. Thomas*,
    517 U.S. 314 (1996) ................................................................................. 8, 13, 14

*Madden v. Myers*,
    102 F.3d 74 (3d Cir. 1996) .................................................................................17

*Martinez v. Ryan*,
    566 U.S. 1 (2012) ............................................................................................. 3-4

*Maxwell v. State*,
    828 So. 2d 347 (Ala. Crim. App. 2000) ...............................................................3

*Maxwell v. State*,
    CR-04-1828 (Ala. Crim. App. Feb. 22, 2008) .....................................................3

*Mayle v. Felix*,
    545 U.S. 644 (2005) ..............................................................................................6

*McClellan v. Young*,
    421 F.2d 690 (6th Cir. 1970) ....................................................................... 10, 15

*McCleskey v. Zant*,
    499 U.S. 467 (1991) ............................................................................................17

*McNair v. Allen*,
    515 F.3d 1168 (11th Cir. 2008) .......................................................................1, 8

*Mohawk Indus. v. Carpenter*,
    558 U.S. 100 (2009) ..............................................................................................7

vi

*Rhines v. Weber*,
    544 U.S. 269 (2005)..................................................................................6

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943)....................................................................................2

*Ruby v. United States*,
    451 F.2d 585 (9th Cir. 1965)..................................................................12

*Rust v. Clarke*,
    960 F.2d 72 (8th Cir. 1992)..............................................................10, 11

*Shoop v. Twyford*,
    596 U.S. 811 (2022)................................................................................12

*Smith v. Commissioner*,
    No. 21-14519 (11th Cir.).......................................................................17

*Spalding v. Aiken*,
    460 U.S. 1093 (1983)..............................................................................19

*Thompson v. Wainwright*,
    714 F.2d 1495 (11th Cir. 1983)...............................................................1

*United States v. MacDonald*,
    435 U.S. 850 (1978)..................................................................................8

*Van Buskirk v. Wilkinson*,
    216 F.2d 735 (9th Cir. 1954)..................................................................12

*Will v. Calvert Fire Ins. Co.*,
    437 U.S. 655 (1978)............................................................................9, 15

*Woodford v. Garceau*,
    538 U.S. 202 (2003)................................................................................12

*Walton v. Att'y Gen. of Ala.*,
    986 F.2d 472 (11th Cir. 1993) ...............................................................19

*Yong v. INS*,
   208 F.3d 1116 (9th Cir. 2000) ........................................................ 12, 15

**Statutes**

28 U.S.C. § 1651(a) ......................................................................................2

28 U.S.C. § 2243 ...................................................................................... 12, 13

Antiterrorism and Effective Death Penalty Act of 1996.................................. 12, 19

**Rules**

11th Cir. R. 27-1(b)(1) ................................................................................... i

Rule 4, Rules Governing § 2254 Cases ..................................................................12

Rule 9(a), Rules Governing § 2254 Cases,
   advisory committee's note (1976 amend.).................................................... 12, 19

**Other Authorities**

U.S. Courts, Table C-5, *U.S. District Courts–Median Time Interval From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2025,*
   www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf..............16

## PETITION FOR WRIT OF MANDAMUS

Michael Craig Maxwell is an Alabama prisoner who was sentenced to death in 1998 for the brutal slaying of Harold Pugh and his eleven-year-old son, Joey Pugh. Maxwell filed a federal habeas petition in the U.S. District Court for the Northern District of Alabama on July 29, 2010. Nearly sixteen years later, despite four motions for a timely ruling, that petition remains pending. With no alternative recourse and no power to enforce Maxwell's sentence until his federal habeas petition is resolved, the State respectfully requests a writ of mandamus instructing the district court to dispose of Maxwell's petition by a date certain, such as within thirty days.

"Comity requires sensitivity, not indifference, to the full spectrum of state interests implicated by federal-state habeas review." *Thompson v. Wainwright*, 714 F.2d 1495, 1507 (11th Cir. 1983) (Godbold, C.J.). Chief among them is the State's powerful interest in the swift enforcement of its criminal sentences. Delay frustrates criminal justice in a capital case *uniquely*, for as long as an execution is stayed, the federal courts enforce an indefinite "commutation of a death sentence to one of imprisonment." *Id.* at 1508. Thus, federal review must "be carried out in a timely fashion to prevent unnecessary interference with a state's authority." *McNair v. Allen*, 515 F.3d 1168, 1175 (11th Cir. 2008). The "special force" of comity, federalism, and finality owed to state-court judgments at the time of adjudication, *id.*, is a hollow promise if that time never arrives.

**STANDARD OF REVIEW**

The Court "may issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). "The traditional use of the writ" of mandamus "both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). Mandamus "is a tool to keep the courts functioning within the constitutional and congressional design." *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1509 (11th Cir. 1987).

A mandamus petitioner must satisfy three conditions. First, he must "have no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). Second, his right to relief must be "clear and indisputable." *Id.* at 381. Third, the Court "must be satisfied that the writ is appropriate under the circumstances." *Id.*

"Mandamus may be used to direct a district court to decide a pending case when there has been unreasonable delay in rendering a decision." *In re Porter*, No. 23-11103, 2023 WL 6182543, at *1 (11th Cir. July 25, 2023) (citing *Johnson v. Rogers*, 917 F.2d 1283 (10th Cir. 1990), which held that a fourteen-month delay in ruling on a habeas petition was impermissible); *In re Futch*, No. 14-14955, 2015 WL 1954063, at *1 (11th Cir. Apr. 27, 2015) (fourteen-month delay "unreasonable").

2

**STATEMENT**

### I. State conviction and postconviction proceedings.

In May 1998, Maxwell was convicted of four counts of capital murder for the brutal slaying of Harold Pugh and his eleven-year-old son Joey Pugh. DE40-20 at 2-3. The jury recommended that Maxwell be sentenced to death, and the trial court sentenced him accordingly on June 30, 1998. *Id.* at 24-36.

Maxwell's convictions and death sentence were affirmed on direct appeal. *Maxwell v. State*, 828 So. 2d 347 (Ala. Crim. App. 2000), *cert. denied*, No. 1992222 (Ala. Mar. 8, 2002), *cert. denied*, 537 U.S. 951 (2002) (mem.).

In July 2003, Maxwell filed a Rule 32 petition for state postconviction relief. The circuit court denied and dismissed his petition on April 26, 2005. DE40-20 at 61-97. That judgment was affirmed. *Maxwell v. State*, CR-04-1828 (Ala. Crim. App. Feb. 22, 2008), *cert. denied*, No. 1071062 (Ala. May 14, 2010).

### II. Federal habeas proceedings begin in 2010.

Maxwell filed a § 2254 petition on July 29, 2010. DE1. The district court promptly entered a scheduling order. DE4. Maxwell amended his petition, DE8, and on January 5, 2011, the State filed an answer, a merits brief, the state-court record, and the habeas checklist. DE13–DE16. Maxwell replied on March 7, 2011. DE20.

In July 2013, the court ordered Maxwell's counsel to show cause why Maxwell "should not be afforded replacement counsel" in light of *Martinez v. Ryan*,

566 U.S. 1 (2012). DE21. Because Maxwell's counsel in federal habeas had also represented him in state postconviction proceedings, the court reasoned that "a conflict of interest may have arisen." *Id.* After receiving counsel's response, the court withdrew Maxwell's attorneys and appointed new ones. DE23.

That September, the court entered a new briefing schedule "to provide for the expeditious and effective processing of this petition." DE24 at 2. The court granted Maxwell 180 days to "file an amended brief specifically identifying any procedurally defaulted claims in [his] habeas petition for which the errors of postconviction counsel establish cause and prejudice to overcome the procedural default." *Id.* at 5. The court set deadlines for a response and reply. *Id.* at 5-6.

Maxwell filed his amended brief on March 3, 2014. DE28. He argued that the court "should excuse" certain procedural defaults and grant him discovery and an evidentiary hearing. *Id.* at 41, 45. The State filed its brief on May 30, 2014, arguing that Maxwell was not entitled to discovery, an evidentiary hearing, or review of his procedurally defaulted claims. DE30 at 11-37. Maxwell replied on June 30, 2014, thereby concluding the supplemental briefing on *Martinez*. DE31.

The matter was "ripe for review," according to the district court, on December 12, 2017. DE32. Six months later, the case was reassigned, DE34, to a judge who had previously been the magistrate judge assigned to the case from 2012 to 2013.

On October 31, 2019, the State moved for a timely ruling. DE35. Nearly four years later, on September 22, 2023, the State moved *again* for a timely ruling. DE36. On March 28, 2024, the district court granted both motions, stating that it would "enter a ruling in this case at the earliest time practicable." DE37 at 3.

On June 17, 2024, the State filed a third motion for a timely ruling. DE38. That motion gave notice of the State's intent to seek mandamus if the court did not rule within sixty days. *Id.* at 6. On June 25, 2024, the court granted the motion. DE39 at 2. "To facilitate resolution," the court ordered the State to "upload to CM/ECF the 21 volumes of state court records previously filed manually" and ordered the parties to file new briefs to "give the Court the benefit of the parties' analysis" of authority decided since the briefing a decade prior. *Id.* The case would "stand[] ready for a decision" upon receipt of the record and updated briefs. *Id.* at 3.

The State uploaded the state-court record the same day, DE40, and filed a revised brief on July 31, 2024, DE41. On September 27, 2024, Maxwell filed his revised brief. DE47. On October 28, 2024, the State replied, DE48, and on November 12, 2024, Maxwell filed a sur-reply. DE49.

On August 29, 2025, the State filed a fourth motion for a timely ruling. DE50.

On September 8, 2025, the district court denied the motion as moot in a text order, adding: "The Court is working on a memorandum opinion for this case and will issue the opinion as soon as it is ready for publication." DE51.

5

## REASONS TO ISSUE THE WRIT

### I.    The State has no other adequate remedy available.

*No prospect of relief below.* Because many death-row inmates have an "incentive for delay," *Mayle v. Felix*, 545 U.S. 644, 674 (2005) (Souter, J., dissenting); *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005), the State must rely on the courts to ensure that habeas remains aimed at "the achievement of swift and imperative justice," *Fay v. Noia*, 372 U.S. 391, 435 (1963). In the court below, the State moved for a ruling repeatedly. Most recently, in August 2025, the State expressed its intention to seek mandamus from this Court. DE50 at 6-7. The district court responded that it was "working" on the case and denied the motion as moot, DE51, suggesting that a ruling was forthcoming. That was nearly six months ago. After many years of waiting, the State finds itself at a loss as to how it could otherwise move the district court to decide the matter.

The longer the State waits, the greater the harm to its interests. Because capital cases almost invariably take decades to complete, family and friends of the victim sometimes do not live to see a death sentence carried out. And in the rare case where habeas is granted, violent criminals who should be retried or resentenced may "go free merely because the evidence needed to conduct a retrial has become stale or is no longer available." *Edwards v. Vannoy*, 593 U.S. 255, 263 (2021); *see also Herrera v. Collins*, 506 U.S. 390, 403, 417 (1993); *Engle v. Isaac*, 456 U.S. 107, 127-28

(1982). Federal review already "disturbs" the "interest in repose," "denies society the right to punish," and "intrudes on state sovereignty." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Every day of delay exacerbates those harms by "extend[ing] the ordeal of trial for both society and the accused." *Isaac*, 456 U.S. at 127.

***No prospect of relief by appeal.*** Mandamus cannot be "a substitute for appeal," *Ex parte Fahey*, 332 U.S. 258, 260 (1947), but appeal is not an option here. The district court has "effectively frozen the litigation and thwarted the possibility of an appealable final order." *In re Smith*, 926 F.2d 1027, 1030 (11th Cir. 1991). If the State waits until final judgment to challenge the delay, the damage would be done, and this Court "could do nothing to provide a remedy for the improper delay." *In re Parker*, 49 F.3d 204, 207 (6th Cir. 1995); *see In re Am. Med. Sys.*, 75 F.3d 1069, 1077 (6th Cir. 1996) ("The writ provides some flexibility in instances where rigid enforcement of the final judgment rule would result in injustice.").[1]

If the State tries to bring an interlocutory appeal, this Court would likely refuse jurisdiction on the ground that the matter does not fall within the "small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009). Even if *some* order denying a timely ruling could be immediately appealed, this Court is unlikely

---

[1] *Cf. In re Connor*, 458 S.W.3d 532, 535 (Tex. 2021) (mandamus available where defendant would otherwise "be required to incur the delay … of appeal to complain of delay in the trial court").

to hold that "the entire category" of delayed-adjudication claims qualifies. *Id.* at 107; *cf. United States v. MacDonald*, 435 U.S. 850, 857-61 (1978) (no interlocutory appeal of orders denying speedy-trial claims). "[E]xhaustion of futile remedies" is not a prerequisite to mandamus. *In re Patenaude*, 210 F.3d 135, 141 (3d Cir. 2000).[2]

***No prospect of relief by carrying out the prisoner's sentence.*** Under current precedent, a state prisoner's death sentence is effectively stayed through the first round of federal habeas review. In *Barefoot v. Estelle*, the Supreme Court held that while a prisoner's first petition is pending, "a court of appeals, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution." 463 U.S. 880, 893-84 (1983). In *Lonchar v. Thomas*, the Court extended the rule such that a district court "must issue a stay to prevent the case from becoming moot" if the court "cannot dismiss [the prisoner's first] petition on the merits before the scheduled execution." 517 U.S. 314, 320 (1996). For practical purposes, these decisions make federal habeas review "the last [] obstacle to execution" such that States generally "set an execution date" only "after the United States Supreme Court has denied certiorari." *McNair*, 515 F.3d at 1175-76.

---

[2] If the Court disagrees, the State respectfully asks that the Court would clarify that an order denying a motion for timely ruling is immediately appealable so that the State could again move the district court for a timely ruling and appeal.

In effect, the prisoner in the proceeding below is the beneficiary of an automatic and seemingly interminable stay of execution so long as his federal habeas petition remains pending. In these circumstances, mandamus is the only option.

## II.    The State has a clear and indisputable right to relief.

The State seeks mandamus to "compel" the district court "to proceed to a final judgment." *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 622 (1838). This was a traditional use of the writ "in England, by the king's bench, as having a general supervising power over inferior courts," and in this country, to "bring[] the case to a final judgment or decree, so that it may be reviewed. The mandamus does not direct the inferior court how to proceed, but only that it must proceed … to a final determination; otherwise it cannot be reviewed in the appellate court." *Id.* The Supreme Court has reaffirmed the writ's availability for this purpose: "There can be no doubt that, where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661-62 (1978) (quoting *Knickerbocker Ins. Co. of Chicago v. Comstock*, 83 U.S. 258, 270 (1872)). Thus, this Court "has the power to direct a district court to proceed to judgment in a pending case 'when it is its duty to do so.'" *Id.* at 662. Here, where there are no obstacles to final judgment, there can be no doubt—*i.e.*, it is "indisputable"—that the district court has a duty to proceed to

judgment. A corollary of that duty is the right of an aggrieved party to seek mandamus to enforce it. Beyond the baseline right of any litigant to a timely ruling,[3] the subject matter here—a first federal habeas challenge to a state prisoner's capital conviction and sentence—presents strong reasons to issue the writ.

1.      The "State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019). Though "excessive" delays in capital cases are "now typical[]," *id.*, it used to be common for courts to say that habeas cases, "particularly" capital ones, "deserve the *utmost priority*." *Rust v. Clarke*, 960 F.2d 72, 73 (8th Cir. 1992) (emphasis added); *see, e.g.*, *In re Parker*, 49 F.3d at 208 (Because States need "at least tacit approval of the federal courts, … [they] have a right to speedy review of their judgments. We require priority for death penalty habeas actions[.]"); *In re Dutton*, 9 F.3d 1548 (Table), 1993 WL 460773, at *4 (6th Cir. 1993) (unpublished) ("[S]uch actions [should] be given priority upon the district court's docket and be addressed without undue delay."); *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970) ("Habeas corpus is a speedy remedy entitled to preferential consideration to insure expeditio[n]."). "This is not only 'because of the interests of the habeas petitioner,

---

[3] *See, e.g.*, *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (granting mandamus where case had been pending for nine years and ordering court to rule within thirty days); *In re Daker*, 685 F. App'x 790, 791 (11th Cir. 2017) (granting mandamus to compel magistrate judge to hold evidentiary hearing after less than one year of delay).

who may be unlawfully kept on death row, but also the state, whose interests in finality deserve the concern and deference of the federal courts.'" *In re Dutton*, 1993 WL 460773, at *4 (quoting *Rust*, 960 F.2d at 73). "Similarly, the public has a vital interest in the fair and prompt conclusion of habeas corpus petitions in federal courts, particularly when they involve a serious crime[.]'" *Id.*

Defendants with worthwhile habeas claims are also harmed by delay. If an inmate's confinement violates the Constitution, then every day that passes in which he remains in prison because of the court's delay does him a disservice. *Cf. Jackson v. City of Cleveland*, 64 F.4th 736, 748 (6th Cir. 2023) ("Earlier consideration of [defendant's state postconviction] petition would have freed him from wrongful incarceration at an earlier date, and thus the delay … cost him nine months of freedom—nine months of being able to see his family, nine months of going outside into the sunshine and the fresh air at will. Delay of a claim for postconviction relief that operates to prolong wrongful incarceration constitutes prejudice."); *Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994) ("The prompt disposition of petitions for habeas corpus is highly desirable, especially given the writ's historic function of protecting the citizen against arbitrary detention; and at some point delay in the disposition of a petition for habeas corpus caused by the government's willfully refusing to file a response might infringe the petitioner's right to due process of law."); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ … is reduced

11

to a sham if the trial courts do not act within a reasonable time."). Delay benefits no one except for prisoners with meritless claims; they receive an unjust windfall.

    **2.**    If anything, recent developments in the law have strengthened the case for prompt adjudication. The Court should take its cue from the federal habeas statutes, namely the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The whole point of AEDPA was "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003); *see also Shoop v. Twyford*, 596 U.S. 811, 818 (2022) (same). Congress enacted several provisions aimed at reducing litigation and achieving finality. Section 2244(d), for example, imposes a one-year limitations period in which to file a petition.[4] Once a petition is filed, courts "shall *forthwith* award the writ" or issue a show-cause order. 28 U.S.C. § 2243 (emphasis added).[5] Traditionally, the government must respond within three days (unless extended). 28

---

    [4] Before AEDPA, Rule 9(a) licensed *dismissal* if the prisoner's delay prejudiced the respondent, and "prejudiced [could be] presumed" if the delay was "more than five years after the judgment of conviction." Rule 9(a), Rules Governing § 2254 Cases, advisory committee's note (1976 amend.). States may now face the same length of delay without the ability to move for dismissal under Rule 9 or laches.

    [5] *See also* Rule 4, Rules Governing § 2254 Cases; *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) ("[T]he statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration[.]'" (quoting *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737-38 (9th Cir. 1954)); *Ruby v. United States*, 451 F.2d 585, 587 (9th Cir. 1965) (interpreting "forthwith" to demand "emergency attention" and "prompt action" that "displaces the calendar of the judge").

U.S.C. § 2243. Congress surely did not intend that its demand for alacrity from the parties would be met with lethargy from the courts.

3.  Mandamus is more essential than ever because of *Lonchar v. Thomas*, 517 U.S. 314 (1996). When a court enters a stay of execution, it has a "concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, consistent with its duty to give full and fair consideration to all the issues presented in the case." *In re Blodgett*, 502 U.S. 236, 240 (1992). Any intrusion on the "sovereign power to enforce the criminal law" comes with "a duty to consider [a prisoner's] claim for relief without delay." *Id.* at 239. Because *Lonchar* imposes a virtually automatic stay of execution for the first round of federal habeas, it also imposes a judicial duty to act promptly and "without delay."

Undue delay diminishes the rationale for *Lonchar*, which was "to prevent the case from becoming moot" when the court needs time "to address the merits." 517 U.S. at 320; *accord Ford v. Haley*, 179 F.3d 1342, 1345 (11th Cir. 1999) (A "stay of execution should be issued, *even if only temporarily*, when … *needed* for the court to address [non-frivolous] issues." (emphasis added)). Such stays should last only as long as it takes to resolve any "serious questions," and petitions "that lack substantial merit" should be dismissed "quickly, efficiently, and fairly." *Lonchar*, 517 U.S. at 325. Yet it seems that the Northern District of Alabama treats every petition as one raising "serious questions" by default—at least nothing on the docket suggests the

13

court found "substantial merit" before putting this case on ice. Accordingly, the power to *pause* state criminal justice *temporarily* to review *serious* claims has become an automatic and indefinite barrier to justice in every case.

At some point, the district court has had long enough to review the merits, and the equitable authority underlying *Lonchar* should expire. At some point, a sovereign State should be allowed to carry out a presumptively lawful criminal sentence. But the Court can leave that question for another day by granting the writ and compelling the district court to rule.

As this Court has recognized, "the Supreme Court has repeatedly held that mandamus will lie in a proper case to direct a court to decide a pending case." *In re Bennett*, 136 F.3d at 1281 (collecting cases). To that end, many courts of appeals have used mandamus to compel district courts to decide habeas cases. For example:

- *In re Bennett*, 136 F.3d 1279 (11th Cir. 1998), *vacated as moot*, 136 F.3d 1281. This Court granted the writ in a non-capital case after a habeas petition had been pending for less than two-and-a-half years. There, a magistrate judge had denied "a motion for an expedited ruling," citing "limited resources" and promising to "enter an order in due course." *Id.* at 1280. But after "six months," "'due course' ha[d] not come to pass," and this Court ordered a decision within sixty days (or ninety if a hearing were held). *Id.* at 1280-82.

- *In re Hicks*, 118 F. App'x 778 (4th Cir. 2005). The Fourth Circuit issued the writ after a habeas petition had been pending for less than two-and-a-half years, ordering the district court to rule within sixty days.

- *Johnson v. Rogers*, 917 F.2d 1283 (10th Cir. 1990). The Tenth Circuit issued the writ after a habeas petition had been pending for "fourteen months," despite a judge reassignment and a "heavy backlog." *Id.* at 1284. The court

wrote: "If a fourteen-month delay (absent good reason) were routinely permissible, the function of the Great Writ would be eviscerated." *Id.*

- *McClellan v. Young*, 421 F.2d 690 (6th Cir. 1970). The Sixth Circuit issued the writ after a habeas petition had been pending for just four months, directing the district court to act on it within ten days. *Id.* at 691.

- *In re Dutton*, 9 F.3d 1548, 1993 WL 460773 (6th Cir. 1993). Despite "myriad issues and problems," robust discovery, and hearings over seven years, the Sixth Circuit issued a writ directing the district court to rule on the habeas petition within 180 days. *Id.* at *1-5.

In most if not all of these cases, the courts of appeals issued the writ in circumstances much less compelling than the case at bar. The extreme delay here warrants even greater urgency and attention from this Court.

**III.    Mandamus is appropriate under the circumstances.**

The Court need not decide exactly how long is too long to decide a § 2254 case because wherever the line should be, this case crossed it. The State appreciates that courts have "latitude in the handling of their burgeoning dockets." *In re Blodgett*, 502 U.S. at 243 (Stevens, J., concurring); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Some "delay in adjudicating … is simply a product of the normal excessive load of business." *Calvert Fire Ins. Co.*, 437 U.S. at 667. But even if crowded dockets could justify denying mandamus relief here,[6] what is happening in

---

[6] *See Johnson*, 917 F.2d at 1285 (A "fourteen-month delay … for no reason other than docket congestion is impermissible."); *accord Yong*, 208 F.3d at 1119-21; *In re Bennett*, 136 F.3d at 1281 ("[T]he two-year delay, thus far, in this relatively simple case for no reason other than docket congestion is impermissible."); *Jones*, 572 F.2d at 1280 ("Busy court dockets cannot justify a 14-month delay[.]").

the Northern District of Alabama does not seem to be the ordinary result of a heavy case load or the time it takes to resolve complex legal issues. As of September 30, 2025, the median time from filing to disposition in the Northern District for any case is just 8.7 months.[7] The State's experience is that the Northern District expeditiously resolves just about every other type of matter, including § 2254 petitions in non-capital cases. But if the sentence is death, the case is liable to languish.

Here, Maxwell's petition sat undecided with no action from March 2011 to July 2013, from June 2014 to June 2018 (when it was reassigned), and then from June 2018 to June 2024, when the court ordered "updated briefs" to account for the passage of time owing to the court's own delay. It would be one thing if the district court had just recently "receive[d] the case" and "diligently progressed [it] from the date of its reassignment." *In re Allen*, No. 06-12591-P, 2006 WL 2086002, at *3 (11th Cir. June 8, 2006). But aside from supplemental briefing, litigation in the court below has been essentially "frozen" for years. *Id.* at *1-2. Even six months should be cause for "concern," *In re Womack*, 718 F. App'x 171, 172 (3d Cir. 2018), and even two-and-a-half years of delay visits "severe prejudice" on the State, *In re*

---

[7] U.S. Courts, Table C-5, *U.S. District Courts–Median Time Interval From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2025*, www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf.

16

*Blodgett*, 502 U.S. at 239; *see also Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1997) (expressing "concern" regarding three-month delay).

It is no answer to say that § 2254 cases come with lengthy records. So they come to this Court, which typically hears and decides capital appeals in a year or less,[8] albeit without the more "frivolous" claims deemed unappealable, *Barefoot*, 463 U.S. at 892 n.3. Many other kinds of claims have sizable records from their inception: cases challenging federal administrative action under the Administrative Procedure Act, social-security appeals, certain immigration matters, and bankruptcy appeals—to name a few. Even if capital cases were uniquely demanding, the delay below well outstrips what those demands could justify. In these circumstances, the Court may be "sympathetic" to the district court's "heavy case load" but conclude that it "does not relieve … the[] duty to decide habeas petitions in a reasonably prompt fashion." *In re Bennett*, 136 F.3d at 1281; *cf. La Buy v. Howes Leather Co.*, 352 U.S. 249, 258 (1957) ("[T]here is an end of patience…"); *McCleskey v. Zant*, 499 U.S. 467, 492 (1991) ("Perpetual disrespect for the finality of convictions disparages the entire criminal justice system.").

---

[8] *E.g.*, *Smith v. Commissioner*, No. 21-14519 (briefed June 21, 2022; argued Feb. 28, 2023; decided May 19, 2023); *Barksdale v. Att'y Gen.*, No. 20-10993 (briefed Jan. 6, 2023; argued Oct. 23, 2023; decided May 24, 2024); *Carruth v. Commissioner*, No. 22-13548 (briefed Mar. 17, 2023; argued Dec. 12, 2023; decided Mar. 1, 2024); *Deardorff v. Warden*, No. 23-11589 (briefed Nov. 20, 2023; argued Apr. 10, 2024; decided July 17, 2024).

\*     \*     \*

If the Court decides that mandamus is not warranted immediately, the State respectfully suggests the following alternative remedies.

***First***, the Court could hold the petition in "abeyance for a period of 60 days to allow the district court to rule." Order, *In re Futch*, No. 14-14955 (11th Cir. Dec. 19, 2014), DE4-2 (finding "undue delay" after fourteen months since the last substantive pleading in the district court); *see also* Order, *In re Allen*, No. 06-12591 (11th Cir. May 12, 2006), DE100 (holding in abeyance). It is somewhat speculative whether taking this course would provide complete relief in this case, and it would not necessarily strengthen the guardrails against future undue delay.

***Second***, the Court could issue a writ to prohibit the district court from granting any stay of execution premised on the need to review the prisoner's habeas claims. In effect, the Court would be lifting the *de facto* stay of execution that has been in force since this habeas case began nearly sixteen years ago. *Cf. In re Dutton*, 1993 WL 460773, at \*5 (ordering that absent a disposition "within 180 days," "the stay of execution … shall be vacated without further recourse to this court"). Alternatively, the Court could order the district court to enter a formal stay, which the State could then appeal. Either option has the downside of leaving the prisoner's habeas claims unresolved but the upside of giving the State a way out from the indefinite stay.

18

***Third***, the Court should at least clarify that the kind of delay that occurred here must be the exception, not the norm. Before AEDPA, the State could (and did) move to dismiss belated petitions under Rule 9(a), which embodied the equitable doctrine of laches. *See, e.g.*, *Clency v. Nagle*, 60 F.3d 751, 754 (11th Cir. 1995); *Walton v. Att'y Gen. of Ala.*, 986 F.2d 472, 475-76 (11th Cir. 1993). Although Congress declined to codify a firm rule, the committee notes suggested that five years of pre-filing delay would give rise to a presumption of prejudice. *See Spalding v. Aiken*, 460 U.S. 1093, 1095 & n.1 (1983) (statement of Burger, C.J.); *Hill v. Linahan*, 697 F.2d 1032, 1035 & n.3 (11th Cir. 1983); Rule 9(a), Rules Governing § 2254 Cases, advisory committee's note (1976 amend.). Today, the same length of delay can occur *after* a habeas petition is timely filed, and the State has no apparent remedy. It would be a modest reform for this Court to resuscitate the general rule of thumb that five years of delay is too much delay.

## CONCLUSION

The Court should grant the petition and issue a writ of mandamus, ordering the district court to dispose of the prisoner's habeas petition by a date certain, such as within thirty days.

19

Respectfully submitted,


Steve Marshall
  *Attorney General*
A. Barrett Bowdre
  *Solicitor General*
**/s/ *Robert M. Overing***
Robert M. Overing
  *Principal Deputy Solicitor General*
Henry M. Johnson
  *Assistant Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
Robert.Overing@AlabamaAG.gov

March 3, 2026

**CERTIFICATE OF COMPLIANCE**

This petition complies with the word limit of Fed. R. App. P. 21(d)(1) because it contains 5,153 words, excluding the items exempted by Fed. R. App. P. 21(f).

This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman.

*/s/ Robert M. Overing*
Robert M. Overing
Counsel for Petitioner

**CERTIFICATE OF SERVICE**

I certify that on March 3, 2026, I filed this petition using the Court's CM/ECF system, which will serve counsel for all parties to the district-court proceeding. I certify that a copy of this filing will be contemporaneously provided to the district court by filing a notice on the docket below. Fed. R. App. P. 21(a)(1).

*/s/ Robert M. Overing*
Robert M. Overing
Counsel for Petitioner